The next matter, number 24-1754, U.S. Securities and Exchange Commission v. Gregory M. Lemelson, et al. At this time, would counsel for the appellants please introduce themselves on the record to begin? Good afternoon, Your Honors, and may it please the Court. Russell Ryan with the New Civil Liberties Alliance on behalf of the appellants, the Reverend Father Emanuel Lemelson and Lemelson Capital Management. I'm going to refer to them for simplicity together as Lemelson this morning. I'll also introduce my colleague, Andrea Trefoy. She's also with the New Civil Liberties Alliance. May I please reserve two minutes for rebuttal? You may. Two years ago, this Court affirmed the District Court's final judgment, which enjoined Lemelson from violating certain provisions of the federal securities laws for a period of five years and imposed a $160,000 civil penalty. Those sanctions were far less severe than what the SEC demanded. Even after a jury rejected most of the Commission's claims, including the most serious fraud claims, the SEC demanded a permanent lifetime injunction that, for all practical purposes, would have excluded Lemelson, who was then in his mid-40s, from ever working in the securities industry again. The final judgment instead awarded the SEC only a five-year injunction, which will expire less than two years from today. The SEC demanded well over a million dollars in discouragement and interest, although it did reduce that demand to $750,000 after trial. But the final judgment ultimately awarded the SEC $0 in discouragement and $0 in interest. The SEC also demanded more than $1.3 million in civil penalties on top of the discouragement, but the final judgment imposed only a $160,000 penalty. The SEC did not cross-appeal either the jury's rejection of most of its case or the District Court's rejection of most of its sanctions demands. In denying Lemelson's subsequent motion for costs and fees under the excessive demands provision of the Equal Access to Justice Act, the District Court made four errors of law that this Court should reverse on de novo review. First, despite acknowledging a large disparity between the SEC's demands and the final judgment, the Court used the wrong point of comparison in nevertheless finding the demands reasonable. Instead of comparing the SEC's demands against the final judgment it obtained, as EJID requires, the Court compared the SEC's demands against the facts and the claims alleged in the SEC's original complaint. Second, the Court grafted on EJID a categorical exclusion for all demands made at any point in a litigation after the complaint is filed. Third, the Court ignored entirely the SEC's initial and continuing demand for a permanent lifetime injunction. And fourth, the Court ruled that no demands were made in the SEC's original complaint. Each of these legal errors warrants reversal. Counsel, can I turn you to one question that I've been trying to think through? I understand your argument that the Court used the wrong point of comparison. She didn't compare it to the final judgment versus the initial. But when I just look at the statutory language to try to understand what does qualify as a demand, the statute says that it has to be something that leads to the adversary adjudication. So how can a demand in this case, even if we sort of put aside what the categorical rule should be, I understand you disagree with her about categorically anything after the complaint. It's too late. But here it wasn't just after the complaint. It was after a full liability finding. You know, the jury trial liability has been determined. How can that qualify as a demand that leads to the adversary adjudication when the adversary adjudication was finished at that point? Because it directly led to the adversary adjudication of the sanctions that resulted in the final judgment. I think any demand that's made during the course of the litigation ultimately leads to the adjudication of the case and the entry of a final judgment. So you think a demand made at any point before final judgment qualifies because you're just saying the judge is always going to look at that demand and has to decide it in some sort of way and that's enough according to you under the statute?  In a case like this, you would expect the plaintiff to adjust its demands after it has lost its most serious charges after a jury trial. But the SEC had another opportunity to make a demand, and it basically doubled down on what it had been demanding all along. And those demands were minuscule. I mean, those demands compared to the judgment are, in our view, plainly excessive and unreasonable. But in terms of the statutory language, you're saying the term, the phrase adversary adjudication, means any ruling by the district court at any point in the case? I think it means the adjudication of the case embodied by a final judgment. I think that's the most natural reading of the statute. Also the demand provision 2412D2I, but shall not include a recitation of the maximum statutory penalty in the complaint or to elsewhere. That elsewhere language certainly supports your argument that the, which led to the adversary adjudication extends beyond the initial complaint. I would agree. I would also point to. Well, you made the argument. I just am repeating it. Well, I appreciate it, Judge Lynch. I'll also point to the language at the beginning of the statute, which says that it covers all demands made in a civil action brought by the United States. It does not say all demands in the complaint that begins a civil action, which is essentially what the district court ruled. And it certainly doesn't say demands made before the filing of a complaint in a civil action brought by the United States, which seems to be what the SEC would have you interpret it as. It says demands in a civil action brought by the United States. Counsel, I think you're using the plural demands, but that's not what the statute says. The statutory language says, and I'm just reading right now, if in a civil action brought by the United States, the demand by the United States is substantially in excess. So it refers to a single demand with the definite article, the, not demands plural, which is what you've been discussing. And so this sort of relates to my previous question that I asked you. If we're talking about the demand, doesn't the statute envision a single demand rather than sort of any request throughout the entire case that could lead to any ruling by the district court? Why doesn't the undermine your argument? I would read that certainly in some cases there's one demand. There may be a demand in the complaint or it may be a demand made after liability is established. But in other cases, there are going to be multiple demands. You're absolutely right that practically that might be the case, but we're trying to interpret the actual language used by Congress in the statute. And the statute talks about if in a civil action brought by the U.S., the demand. And so we're trying to understand what they meant by the demand that Congress didn't use, plural. I think that's the demand at issue. So regardless of when that demand was made, the word the is just to say the demand that we are evaluating and that we're comparing against the final judgment. And that could be the demand in the complaint. It could be the demand made after trial, as in this case. There was a demand made at two different times. And whichever one you happen to be evaluating and comparing against the judgment, that is the demand for immediate purposes. Isn't the reading that you're suggesting right now, wouldn't it have made more sense for Congress to use the word any then? Because really what you're saying is any demand made at any point in the case qualifies. And that seems to be different language than what's in the statute itself. I suppose Congress could have written it slightly differently like that. But respectfully, I don't think we should read into the word the, that type of intent. I really don't. It's interesting, you know, Congress also could have put in the demand in the complaint but did not insert any temporal language at all. I suppose if the complaint didn't have a demand, but a demand is made later in the case and is not covered by the self-harbor, then the argument could be Congress only wanted one demand. It didn't matter when it was made. But that is at some tension with the language about the, which led to adjudication. Because surely Congress would have wanted to encourage settlements at various points in the case. Unfortunately, under the current regime, we're not supposed to look at legislative history and figure out what Congress was trying to do. Well, the legislative history does have a comment by one of the sponsors that a demand could be made, could be a demand that happened before the case was filed. But it didn't say must. But I don't think we need to go to legislative history here. I'd also mention that we cited two cases in our briefs, the Berlacher case out of the Eastern District of Pennsylvania and the Wertz case, which was before the SEC itself. And in both of those cases, the demand was after the complaint. And in the Wertz case, the SEC Administrative Judge specifically said there were a series of demands throughout the litigation, including when the case was appealed to the commissioners. So at least in those two cases, it doesn't seem to have occurred to anyone that there couldn't be demands after the initial complaint and that there couldn't be multiple demands made in the course of a litigation. Counsel, can I ask you, because I completely understand your argument that the demand could come after the complaint and that's early in the case and it seems to fit with the statutory language. But again, if we go back to the definition of demand then, which says that it has to be an express demand that leads to the adversary education, if your interpretation was correct, which is that it can be any demand at any time, what is the point of the which led to the adversary adjudication phrase? What work is that doing? Because we, again, have to give meaning to every phrase and word Congress has used. What work do you see that doing under your preferred construction? I think it's the demand that led to a final judgment. If it doesn't lead to the final judgment or if it's withdrawn, I think it's certainly not leading to the final judgment. If it's rejected, for example, if it's accepted even, a settlement, I don't think it leads to the final adjudication in those situations. So I do think those terms are doing important work, if that makes sense. I see my time has essentially expired, so I'll let my colleague take it. Thank you.  Thank you, Counsel, at this time. Would Counsel for the Securities and Exchange Commission please introduce himself on the record to begin? Good morning, Your Honors. And may it please the Court, Paul Alvarez for the Securities and Exchange Commission. Your Honors, the district court's order denying attorney's fees under EJA should be affirmed. As the district court found, there was no demand in this case by the commission, and even if this court were to find that there were demand, the district court was within its discretion in concluding that the demand was reasonable, and in any event, Father Lemelson committed willful acts and also acted in bad faith, and thus fees would not have been appropriate here. And I'd like to, if I may, begin with what you had referenced, Your Honor, about the language, the statutory language of demand. And you asked some very good questions about the work that leads to the adversary adjudication is doing, and under my friend's interpretation, it does no work at all. And I'd like to point this Court to the INSV Gene case that the Supreme Court has issued. And the Supreme Court discussed the specific purpose of EJA, among other things, and I'll cite to it, it's 496 U.S. at 163. And the Supreme Court said at that page that the specific purpose of EJA is to eliminate for the average person the financial disincentive to challenge unreasonable government actions. And again, at 159 note 7, in the same case, it says that the government error that EJA is aimed at curing is, quote, not in the litigation of the case, but the government action that led the private party to the decision to litigate. So what Congress is trying to do here, what the statutory language plainly says by looking at that definition, the test for a demand is an express request for specific relief that leads a defendant to the decision to litigate or not to litigate. And that happens, you know, as the purpose and context of EJA makes clear, that happens at a stage before the litigation has begun. Now, my friend has referred to adversary adjudication as any decision or ultimately eventually might get to the end. But that's not how Congress viewed it. Certainly, I think if you look at the legislative history, they use civil action and adversary adjudication interchangeably. And they also refer to it as the entirety of the, given the context, they refer to it as the entirety of the process and not simply a particular decision. And I think your point, Your Honor, about the demand also rings true with the adversary adjudication. The singular is used both times. And that's important. And as the Supreme Court said in U.S. v. Gene again, the use of the singular supports the conclusion that Congress intended for only one. And so we have the demand, the adversary adjudication, not the demands, not the adjudications. When, the way you just posited it, that demand would be made before there was any complaint filed, if I've understood you correctly. It can be. And I'm not saying that a complaint cannot be a demand. A complaint can be a demand, absolutely can be a demand. But I don't think that because a complaint can be a demand that there necessarily has to be for EJIA purposes a demand in every case under EJIA. There's a difference there. Because, again, Congress is trying to, by enacting the EJIA provisions and specifically the 1996 amendments, Congress was aimed at trying, at preventing the government from using the threat of litigation, whether it is by filing a complaint with a massive request for relief. That threat puts the defendant in a very unfortunate position where they have to decide, do I defend this? I don't think I violated the law, but they're asking for a lot of relief here. And this may effectively extort me into having to either settle quickly. Functionally, that operates at various points in the litigation. Because in this instance, there's a jury verdict. Perhaps it does less than your brother argues it does. But the jury verdict kind of shifts everybody's focus. Nonetheless, and maybe the case could have been settled at that point if the SEC had made other demands than it did. Well, I want to be clear on that. There is, I think I can say with a good degree of certainty that that's not the case here. There were never settlement negotiations between the parties. Father Lemelson made it very explicit that he would not settle. No, no, but I think it's important because you're mentioning that there could be a situation where if we had just asked for something more reasonable at the remedies phase, maybe he would have settled. And I can tell you as a practical matter, that's not true. The fact that he appealed even the five-year injunction that he got is, I think, evidence that he wouldn't have settled that. We're just trying to understand the text of the statute as applied. There are different provisions in here, bad faith, other things that are more as applied. We're just trying to figure out what Congress intended. I completely understand, Your Honor. No, absolutely. But I think counsel, I'd like to ask you a question. Yes, sir. Just on your argument, I have two very simple hypotheticals, and you can take them wherever you want. But I just want to somehow get to your view of an answer to this question. There might be two questions in here. First hypothetical, an outrageously high demand is made by the government in a letter. You want to resolve this matter, you've got to pay X dollars. The party decides we're not going to do that. It leads to adjudication. The government files a complaint with a very reasonable, substantially justified ad damnum at the end of the complaint. So that's one. The second is simply the reverse. The government makes a pre-complaint demand that is a reasonable number, no settlement. The party says, well, we're going to have to fight this. Government files a complaint with an outrageous demand. At the end of each litigation, the government's recovery is very low. You see what I'm setting up? Yes. I want to know in the two hypotheticals that I have presented, on your argument, what is the demand? Well, I think it's important to note that in both of these situations, the demand is being made prior to or including the filing of the complaint, right? So you had in your first hypothetical, you had an outrageous request in a letter and then a reasonable complaint. I think there is an argument and a pretty decent one that perhaps at that point, the letter, the written demand constitutes the demand for EJIP purposes. I think in your second hypothetical. So on the first hypothetical. Yes. There can be no action, I'm sorry, no EJIP action based on the demand in the complaint because you've just identified the other one as the demand. Well, in the first hypothetical, you said that the letter was unreasonable and the complaint was reasonable. Yes, but that doesn't stop anybody from bringing an EJIP request. Well, why would I? No, no, no. I'll ask the question. Okay. That doesn't prevent somebody from bringing an EJIP request. Why is it that one is the demand as opposed to the other? That's my question. Well, because you have the demand. I think the statutory language is clear that there has to be the demand, and it's the initial demand. It's not subsequent demands. And again, I think this goes back to the purpose. Okay, then answer the second hypothetical. Okay. Is it the initial demand? You have a demand that's reasonable. And then you have a demand that is unreasonable, but it's in the complaint. And so in your second hypothetical, someone would sue on the unreasonableness, I'm sorry, on the asking that the letter that was reasonable was effectively the demand? I'm asking you, which one is the demand? Well, I mean, I think that the argument they would make, I think it is a fairly strong argument, would be that the complaint itself was the unreasonable demand under, was the excessive demand under EJIP. So it sounds to me like so long as it is before or at the filing of a complaint, you get to pick. No, I think, again, I think you have to look at the, I think it is, I think you have to look at what the excessive, what the written excessive demand was. I mean, if you're saying that in the second hypothetical that there's an outrageous complaint, but there was sort of a, hey, settle this or else we're going to file a suit against you, I think the argument would be in that scenario that the letter itself wasn't a specific enough demand because it didn't request specific relief. And it wasn't, so it didn't fit within the definition. If they said we will seek, you know, maximum penalties or something to that effect, I think that would be under the carve out of the definition of demand under D2I. But the complaint itself asking for unreasonable relief would be a demand that might fall within that because it specifically asked for a, you know, maybe an exorbitant amount of specific relief that it sought. Counsel, I think, you know, two of the issues that we have to decide in actually construing the statutory taxes, can there be multiple demands? Is it the demand singular or can it be multiple demands? And then the other one is a timing question and there are other issues, obviously. But one thing that I'm just struggling with is even if we accepted your interpretation that it has to come very early in the case, the demand, that's what Congress intended, even though we have to look at the language, not congressional history, legislative history, why couldn't it be early in the case but shortly after the complaint? In other words, I don't understand based on the statutory text what the time limitation is other than it has to lead to the adversary adjudication. So you could file a complaint and then soon after you file a complaint you could send a letter, like Judge Howard's example, or you could wait a little while in the proceeding and then send a letter with a demand. So what about the statutory text imposes a time limit on the demand other than the phrase that it has to lead to the adversary adjudication? I mean, I think that's pretty clear language, has to lead to the adversary adjudication. Well, what does it mean? Well, lead to, I think lead to. Let me complicate this. Unless the party has committed a willful violation of law or otherwise acted in bad faith or special circumstances making an award unjust, how do you know that if it is the complaint? Don't all of those things occur in the course of the adjudication? I think when you take a look at that, the bad faith and the willfulness, those are separate questions, and the Supreme Court addressed some of how you look at this, albeit in the substantial justification context of D1A, but I think the reasoning rings true for D1D here is that there are certain threshold inquiries that have to be made. One, was the demand excessive? Was it an express demand? Did it lead to? Unfortunately, it's not different sentences. It's all one sentence. I understand that, but I think that the threshold is really, first you have to decide whether there was an excessive demand, then you look to whether or not the demand was reasonable, and then even if there is a reasonable demand or an unreasonable demand, I guess in this instance, if it's unreasonable under the facts and circumstances of the case, then you look to whether there are other things that might prevent someone from receiving EJF fees, one of which is, did the defendant, after looking at the entirety of the case, engage in willful misconduct or engage in bad faith throughout the litigation? But I don't think you reach those until you've decided, A, whether you have a demand, and, B, whether the demand under the facts and circumstances of the case was reasonable. Well, tell me if you think this is the wrong way to understand this, but generally speaking, folks request their attorney's fees at the end of a case. So I suppose at that point, a district court is always deciding the award at the end of the case, and they can decide at the end of the case, regardless of when the demand was made, whether there was conduct that would fall under the exception, such that it declines to make the award even if there was a demand. Is that essentially what you're saying? Yes, that's absolutely right. And as the Supreme Court said, I mean, the district court has the discretion to make these determinations because it is in a superior position, given its understanding of the facts of the case, how the litigation went about, and that's exactly why the courts, the district courts have this discretion because they're best situated to make those assessments, not only on the reasonableness of the demand. Unfortunately, discretion has nothing to do with adherence to the text of the statute. No, that's correct, but in terms of whether or not it's a demand, it's a different question than whether or not the demand was reasonable, which falls squarely within the district court's discretion. And on that point, if I may just briefly, my friend mentioned about when you look at the reasonableness of the demand. And, you know, we think that leads to prevents any reference to a briefing, a remedies briefing as constituting a demand. But certainly if you're going to look at the complaint, you have to assess the reasonableness of the action, the reasonableness of the demand, at the time the demand was made because that's how you measure the reasonableness of anyone's actions. Surely if the commission had the knowledge at the time it filed the complaint that down the line, a year down the line it wasn't going to get the judgment that it thought or the relief, the judgment that it sought or the relief that it sought, it wouldn't have made the request in the way that it did at the time of the complaint. But that's not what – but that's basically Monday morning quarterbacking the complaint and the demand. And you have to measure the reasonableness of the demand at the time the demand was made. And as the district court found, that was reasonable. And I don't take my friend to be arguing that if that standard applies, that the district court got it wrong. What I take my friend to be saying is the district court got it wrong in saying you look to the reasonableness of the complaint at the time the complaint was filed. But nowhere in their briefing do they say that if you measure it by the standard of measuring the complaint's reasonableness at the time it was filed, do they say the district court got it wrong. They don't point to any facts or any errors that the district court made in concluding that the complaint was a reasonable demand to the extent that this court even finds that it's a demand, which it shouldn't. Thank you. Thank you very much, Your Honors. Thank you, counsel. At this time, would counsel for the appellants please reintroduce himself. He has a two-minute rebuttal. Thank you. Russell Ryan again on behalf of the appellants. Picking up on Judge Lynch's point, I think this appeal has little to nothing to do with discretion. We're arguing legal errors and erroneous interpretations of statutory text. And on those questions, I think it's fairly obvious from the briefing, this panel is riding on essentially a clean slate. There's really no useful precedent out there that deals with these specific questions. SEC counsel raised the willfulness point, but willfulness was never an element of any of the charges in the case below. It was never considered by the jury or the district court. And even on the each application, the district court didn't think she needed to get to that question, and so she never did. So I don't know why this court would engage in initial fact-finding on those issues. To the extent the SEC says, well, it was a scienter-based violation, so by definition that must mean it was willful, courts have rejected that kind of analysis. One case is the Circle C construction case out of the Sixth Circuit that's cited in the district court decision. But in any event, willfulness is a term of art in securities laws, and it has all kinds of collateral consequences when the SEC alleges and proves willfulness. It can lead to criminal sanctions, it can lead to an industry bar without going to court, and it can also lead to what the securities regulators call a statutory disqualification. So if you buy into the SEC's suggestion that just because it's a scienter-based violation, it's necessarily a willful violation, that is going to wreak havoc on securities practitioners and people in the industry. I see my time is up. Thank you very much. Counsel, I think there have been a number of decisions by the Supreme Court and our court on interpreting statutes, statutory construction, textual issues, that perhaps you haven't had a chance to address some of the most recent decisions given the date of the briefing. Would you want an opportunity to do so? Yes, we would. I'm not sure which cases you're referring to. But I would also, on the same point, SEC counsel pretty much led his argument with a footnote in a Supreme Court case that I don't believe was cited in any of the briefs or the decision below. And frankly, I'm not familiar with the case. And so in addition to getting an opportunity to brief other Supreme Court cases, I think, in fairness, I would request that we get an opportunity to read and respond to that footnote that SEC counsel referred to a couple of times. Okay. Thank you, counsel. We'll make sure an order goes out setting a time schedule and a limitation. Would the SEC prefer to file a supplemental brief after your brother files a brief or simultaneously? We can file a brief after my brother. Okay. Realistically, how much time do you need? I would say I would ask for at least a month. I'm not sure which Supreme Court cases you're referring to, so it's hard for me to judge. There's been a whole lot of action about the President's executive orders. You might want to look at some of those. I'm familiar with the cases, and we're involved in some of them. But I just haven't been able to keep up with them, to be honest. The SEC, another two weeks? Briefings, Your Honor, please. If they have a month. But we will file it whenever the court asks us to file it. Thank you. We'll get an order out. Thank you very much.  If I could just, if you could consider at least the possibility of us getting a reply brief. Very short and very little time to do it is fine. We'll get an order out. Thank you both very much. Thank you very much. Thank you, counsel. That concludes arguments in this case.